Next case on the court is 5-410-215, Bowman v. Ottney. Good morning, Your Honor. May it please the court, counsel. I am John J. Hopkins, attorney for the Appalachian County Bowman. This case comes to the court on a 308 petition. The question that was certified by this court is clear, it is direct, and it is unambiguous, much like the case law that surrounds it. The question that was certified was this. In this case, which has been voluntarily dismissed pursuant to 735-5-21109, then subsequently refiled, does the trial court have discretion to deny a plaintiff's immediately filed motion for substitution of judge brought pursuant to statute, based on the fact that the court had made substantive rulings in the previously dismissed case? The key words here are discretion, and the answer is no. The question presumes that substantive rulings were made in the previous case, so you don't dispute that. Oh, no. It's been on file for two and a half years. There have been at least a dozen evidential rulings made by the court. The case law with regards to a voluntarily dismissed case is absolutely clear. It is not a continuation of the previous case. It's a new case. It's a new and distinct case. The cases that have been cited in opposition deal with cases that are post-judgment relief. A post-judgment relief like one brought under 1401 would not be akin to this at all. That is the same case. You're asking for a post-judgment relief in the same case. There is a break, like night and day, when there is a newly filed case. At that point, there is a completely different set of rules. In this particular case, there's only the coincidence, and it's an unfortunate coincidence, at least from our perspective, that the case was reassigned to the same judge. Had it been gone to another judge, obviously there would not be the controversy. In this case, the answer to the question should be an absolutely unqualified answer. The statute gives counsel for the plaintiff – counsel for both sides, really, I guess – two types of avenues if they feel, for whatever reason, they cannot receive a fair trial with the trial court judge. They're very akin to a preemptory challenge to a jury and a challenge for cause. The preemptory challenge with the judge has to be made before there's a ruling of substance. In this case, as soon as the newly filed case was reassigned to Judge Overstreet, we filed a petition to change. There hadn't been any rulings, much less any rulings of substance, when the motion was brought before Judge Overstreet. The only fly in the ointment, as it were, is Judge Overstreet declined to follow the enormous body of case law that says that he had no discretion to deny the petition that was immediately filed. He chose instead to latch on to what we have termed an aberrational case, to go further to say, with all due respect to your colleagues in the Third District, a case that has no real logic and underpinnings. It is a case built on a foundation of sand. If you read the Ramos case, the Ramos case is like a brief for the appellate in this case, because it goes from each and every significant decision that says that when there is a case filed, then it's voluntarily dismissed, and then it's refiled, those cases are separate and they are distinct. Judge Overstreet decided he did not wish to follow those and went instead with the Ramos case, which, as I say, makes no attempt to distinguish those cases, makes no attempt to say why they are in error, and makes no attempt to say why the new case is not a separate and distinct case. The Ramos case instead decides that we think it would be better, since this happened to be, as in our case, a coincidental event that it was reassigned to the same judge, that we're going to bring up those judgments or rulings made by that judge and say those are matters of substance. As a matter of fact, if you look at the Ramos case, and the appellate actually did quote this, the Ramos case says that we guess that the Supreme Court will say that this is a continuation of the original case. Not that we think that it's a solid opinion, but we guess that the Supreme Court would take this up and rule in our favor. Obviously, that was a poor choice of words, but it underpins exactly what is wrong with that case. It has no real solid logical or legal foundation. Furthermore, unfortunately, there was no petition for leave filed by Dr. Ramos in that case, so the Supreme Court did not hear it. I thought the petition for leave to appeal was denied. I think maybe it was. I don't really. I apologize. It's my understanding that there was no petition filed, but there may have been one filed and it was denied. So we're left to guess. Either way, the Supreme Court did not take the case to everybody's guess as good as any. Right. But the basic point is this. The motivations, and we deal with this directly in our brief, the motivation that we have and the reasons why I subjectively, going on almost 40 years of practice, I subjectively felt that my client's interest would be better served with another judge. That's in part the reason why, in largest part, why we filed the motion for a voluntary dismissal. Now, does the statute say you can voluntarily dismiss your case except if you think you're going to get a strategic advantage or except if you feel that it's in your client's best interest? Of course it doesn't. The motivations behind it are not in the statute. The – whether or not we receive a – in our perspective, an advantage is irrelevant. The issue in this case is real simple, very, very simple, and it's the issue of a fair trial with a different judge. There's nothing wrong with taking full advantage of the machinery that exists. The machinery that exists is a voluntary dismissal. The – as I say, we believe that it is a fluke, unfortunate coincidence that Judge Overstreet was assigned this – the newly filed case. Again, there is no policy consideration here. The main argument made by the defendant in this case, by the affilee, is that this is a bad policy. It encourages judge shock. It may. It may encourage that. It may discourage it. But that's not within the purview, with all due respect, of this decision. This decision, again, comes down to one very, very, very small and simple consideration. Was the newly filed case – well, let's just call it the refiled case. Was that a separate and distinct case or was it a continuation of the former case? The abundant case law says – and that was even acknowledged in the Ramos case. In the Ramos case, the judge acknowledged that this is not a continuation, but that it is a separate and distinct case. But the judge found that the – that because of the allegation of judge shocking, there should be a situation where the petition for leave or petition for change of judge would be denied. I'll read directly. Appellate Court of Ramos says, Our best guess is the Supreme Court would not endorse the exercise of the right to voluntary dismissal as an end run around the prohibition against judge shocking. Well, I dispute the whole notion of so-called judge shocking. I don't believe that's correct at all. But furthermore, I think it is a statutory right to take the voluntary dismissal. There are restrictions that can be placed upon it. They were not placed in this case. But then when you get the same judge, you have a right because it's now a new case. It's just as if the case had been newly filed. Look at it this way. For the purposes of a voluntary dismissal, when the case is refiled, the other case didn't exist. There is no other case. The other case didn't exist. It can exist for limited purposes in terms of impeachment or statements made under oath. But for the purposes of a procedure, a case doesn't exist. This is the only case. And you stand before the court just as if it's newly filed, just as if it's without any baggages whatsoever. And the only judgment is, was the exercise of change of judge a timely matter? And since in this case, it was exercised immediately after we determined or were advised that Judge Overstreet had been assigned the case, it was clearly timely because there were no rulings, much less any rulings of substance. So it would be, it is our belief, it is our request that the court take into account all the circumstances and that you reverse the judgment of Judge Overstreet, that you grant the plaintiff's motion, or that you send it back with directives to grant the motion. And we specifically find, in your opinion, that you decline to find and decline to follow Ramos because you find it immensely unpersuasive. Unless there are any questions. Thank you, counsel. Thank you. Thank you, Brett, on behalf of Dr. Otten. We're asking this court to answer the certified question, yes, and to affirm the circuit court's denial of the motion to substitute judge. And I think there are really two bases for this, but they're kind of interrelated. First of all, we believe the case law overwhelmingly supports the trial judge's provision in this case. And second, the public policy against judge shopping, after a judge has formed an opinion and made a substantive ruling, is a significant concern in this case and in other cases and in the potential. Now, when we talk about the law, first I'd like to point out that many of the cases that counsel talks about as being the law is clear, don't involve situations as we have here. This is a standard case where a counsel asks to take a switch from a judge and whether or not that trial court has discretion to be able to move away from that trial judge. The thing that changes this case is the fact that we have a refiling of the motion to substitute coming afterwards. Now, when we look at the Ramos case, when we look at the Nymer case, which is the case of this court, we look at the Kozlo case from the Illinois Supreme Court, we see that in each of those circumstances, what the court has done is to take a broad perspective on looking at the litigation between the parties and the issues. It hasn't focused on the nature of the pleadings. It's looked at the controversy between the parties. And I would say if the Supreme Court acknowledged the viewpoint that counsel is offering to this court today, the Kozloff case would have been decided differently. Because if we recall in that case, the appellate court made the exact ruling, we're going to look at the express language of 2-1001A2, and we're going to interpret the word case to mean the instant case filed, the refiled case. The Supreme Court said, no, we're not going to do that. We're going to take a look at the case as litigation between the parties, and that's exactly what they did. And when you look at page 5, that's the Kozloff case. That's a divorce case, right? Yes, it is. And what we were talking about there are post-judgment proceedings filed in the same proceeding. Yes. Which is how that's always done. Yes. And didn't the Supreme Court offer some language, though, that this is a continuation of the same case? Well, Counsel, I mean, Counsel makes that argument that, look, those cases have had, at their essence, a continuation. But I don't think that the Supreme Court's language in Kozloff makes that type of distinction, nor does this Court's language in the Nymer case. It seems when you read those cases that they're concerned at looking beyond the case filed to make sure that we address the judge shopping issue. And I think that's how all of this fits together, and that's how the law and the policy equate with one another, is that when we have the concern of judge shopping, we have to look beyond the actual refiled case or the numeric case number. And we have to say, this case involves not just the new numeric refiled number, but it involves litigation between the parties. And that's, I believe, how we have to look at this case and do the interpretation. Now, let me just ask kind of a preparatory question, okay? Isn't the purpose of the statute that allows substitution of one judge as of right to allow judge shopping? I mean, you get one without giving any reason or excuse. Well, in some respects, I think that's true. But the condition that distinguishes that case from our case is that here, counsel exercises that right after knowing the viewpoints. And I understand what you're saying. The statute itself says you can't do it if the judge has already made a ruling. But I'm just saying, when you talk about this public policy against judge shopping, that statute specifically allows judge shopping. It lets you get rid of one judge for no reason before they've ruled on anything. But the concern I think the court has articulated over and over is the development of a perceived bias in litigation or a tipping of the hat type of, this is how the court is going to rule. Or in our case, this is how the court has ruled. I mean, we have a substantive ruling, significant substantive rulings in the prior case. And so I think that's why you have to take a look at that in the whole context and not just look specifically at the refiled action. You know, one of the things that's troublesome about this case is that if you adopt the petitioner's perspective or the plaintiff's perspective in this case, we believe that this court will have to backtrack or overrule its prior case in Niemann. And it puts it directly. You said in the Niemann case, which was a 2-1401. Yes, but I think the principles are going to conflict. So there's this ruling in favor of the petitioner here places a conflict with this court in Niemann, this court in the Third District, and this court in the rationale of Kozloff. And Kozloff's rationale is permeated in all three of these decisions. And it's the same concept. You look at the nature of the dispute between the parties. You don't confine yourself to how it's framed or how it's played. You say, we've got an issue between these parties. And that's what we've got. We've got a malpractice action against a physician. And it was dismissed and refiled. It's the same malpractice action against this physician. Some of the parties are slightly different from the standpoint of some that were not present in the first case. But they were already dismissed in the case or not active parties at the time. This voluntary dismissal took place. So it was an action between plaintiff and Dr. Opney. And that's exactly what we've got in the refiled action. And so when we look at Ramos, we hear counsel say, well, this is an aberration. This is a one-off case. Well, it happens to be the first case for this issue which squarely presented to the appellate court. And you're right, Your Honor. It did go to the Supreme Court on PLA. And it was denied November of 2013. Counsel says, well, there's no authority to support what Ramos did. They just pulled this out of the hat. Well, Kozloff, the rationale, the principle behind Kozloff, maybe not the exact on four corners holding, but the underlying principle supports what Ramos did. He says it's inconsistent with the law. And, of course, Ramos even recognizes the law under 217 and the implications for refiling. But in the face of that, Ramos court looked at Kozloff. It looked at a Niemeyer case. I don't know why I can't say that case right. It also looked at another case called Partapillo. And we didn't cite Partapillo in our brief, but it's discussed at great lengths in the Ramos case. It's a case where you have multiple filed actions, which is, frankly, a little bit closer than what we have here versus the 214-01. And the same concepts apply. It's the principle and how it reaches over all of these cases and not the specific fact of whether this is a completely new action or a refiled action or a continuation of an action. It's the concept. And the concept is important because that's how the court polices Judge Young. And you're right. I agree with you from the standpoint of if I hear Judge X is petition oriented, plaintiff oriented, on defense counsel, maybe I want to get away from him or her. But that's a very distinct factor than what we have here, where you've got prior substantive rulings or, as this court has also adopted in the Grant City case, the testing the waters test. Now, counsel cites in his brief, and he didn't talk about it today, this Illinois license beverage case. We have a different appellate court district. It doesn't address the question we have before us at all. All they did is say, in the fourth district, do we apply testing the waters? And they said, no. Well, this district does, and that question's not before us. So I think that case has very little value. And I agree with Attorney King on that point about different districts. I mean, Judge Overstreet was bound by this third district decision. Yes, he was. Because there's one appellate court throughout the state, and all circuit judges, if only one appellate court's ruled on an issue, which I think everybody agrees is the only case that's right on point. So he's bound by that. However, we're not, and so we either follow Ramos or do something else. Absolutely. There could be a conflict among the appellate courts. But he was bound by it. Yes, that is a perfect statement. I understand that the appellate courts do like to have harmony in some respects, and it does concern us that this court, if it does adopt the plan's position, will be having to address its prior decision. We think it will conflict 100%. It will have created a conflict with another district, Ramos, and it is contrary to COSLA. And the principle in COSLA controls. And that's the case that you see cited over and over and over again in all these various decisions. It's their concern about Judge Young, and that's what allows it to take a broader view rather than a narrow view of the phrase case under 2-1001A2. And that's, I think, really the essence of this case. Are we going to look at it in a broad sense? Are we going to look at it in a narrow sense? And we think the proper interpretation based on Ramos, based on COSLA, is to look at it in a broad sense, because only by looking at it in a broad sense do we capture the Supreme Court's concern and this Court's concern in prior cases against Judge Young. That's the only way you can do that on these limited facts of this type of case. So that's why we're asking this Court to take a close look at this, to understand that this is not contrary, that this ruling is not an aberration. It's consistent with the principles that the Supreme Court and this Court have pronounced, and to affirm the trial court's ruling below. Unless there are any questions. Thank you. Thank you, counsel. Words make a difference. They make a big difference. You can't just lump everything together. That's why Mark Twain once wrote a long time ago that words make a difference. That's why there's a difference between a lightning rod and a lightning bolt. You can't just throw everything all together and say, well, it's all the same. It's basically the same situation involving Overstreet v. the Bowman family, or the Bowman family v. Dr. Otten. I apologize. The Bowman family v. Dr. Otten. Yes, that's true. But it's two different cases. They're separated by the statute. The cases cited, the Kossoff case is a post-judgment case involving a divorce. The Niemeyer case from this district is a 1401. They're all continuations of the same case. There's no break in the middle, and that's the big difference. That's the absolute big difference. I'm not sure whether Judge Overstreet was bound to follow the Ramos case, but you are not. Ramos is not a persuasively decided decision, and I most respectfully submit that to your honors. Look through that case. You will find that it has no real basis of solid foundation. It should be rejected. And you should gravitate toward the enormous body that orbits and that says just the opposite. We thank the Court for your time. Thank you, Your Honor.